**Excolo Law, PLLC**
Keith Altman (SBN 257309)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
Email: kaltman@excololaw.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

**BRANDI CRAWFORD on behalf of herself and all others similarly situated**

*Plaintiff*,

-against-

**SONY INTERACTIVE ENTERTAINMENT, LLC.**

*Defendants*.

**CASE NO:**

**CLASS ACTION COMPLAINT FOR DAMAGES JURY TRIAL DEMANDED**

1

Plaintiff Brandi Crawford, individually and on behalf of the Class described below, by and through her attorneys, make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiff and counsel, which are based on personal knowledge.

## I.    OVERVIEW OF THE ACTION

1.    In addition to its distinction as a market leader in the manufacture, marketing and sale of gaming consoles, Defendant Sony Interactive Entertainment America, LLC ("SIE" or "Defendant") is also the leading seller of "Apps," *i.e.*, software applications that users download on their mobile computing devices, such as SIE's PlayStation devices. Among the many thousands of Apps that SIE offers for sale are gaming Apps targeted at children. Although numerous gaming Apps are offered for free and may be downloaded at no cost, many such games are designed to induce purchases of what SIE refers to as "In-App Purchases" or "In- App Content," *i.e.*, virtual supplies, ammunition, fruits and vegetables, cash and other fake "currency" within the game in order to play the game as it was designed to be played ("Game Currency"). These games are highly addictive, designed deliberately so, and tend to compel children playing them to purchase large quantities of Game Currency, amounting to as much as $100 per purchase or more. As such, the sale of Game Currency to children is highly lucrative.

2.    Plaintiff BRANDI CRAWFORD bring this class action on behalf of herself and other parents and guardians who (a) downloaded or permitted their minor children to download a supposed free App from SIE, and (b) then incurred charges for game-related voidable purchases that the minor children were induced by SIE to make, without the parents' and guardians' knowledge or permission.

3.    Minors also have the ability to create accounts on the SIE network, claiming that they are their parents, using their parents' credit cards, without their parents' permission or

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint

authorization.  SIE does not effectively prohibit such practices despite their obvious knowledge that minors may engage in such activities due to their lack of maturity.

4.      Plaintiff brings this action for declaratory, equitable and monetary relief under the Declaratory Judgment Act, California's contract laws, Consumers Legal Remedies Act, Business and Professions Code Sections 17200 *et seq.*, and/or for Unjust Enrichment.

## II.    PARTIES

6.      Plaintiff Brandi Crawford is a citizen of and domiciled in Mississippi.  Crawford is the guardian of C.R.B,., a minor.

7.      C.R.B. started to play the video game Fortnite on his PlayStation 4 system in mid 2019 which required him to have an account with the PlayStation Network, an online service used by the PlayStation 4 that allows users to buy and download games and other digital content.

8.      C.R.B. made an account with the PlayStation Network system that allowed him to play the Fortnite video game and purchase the virtual goods known as V-bucks in the game.

9.      V-Bucks are a type of in-game virtual currency or tokens that once bought from the PlayStation Store can be used to buy "skins" in the game Fortnite.

10.     C.R.B. used his mother's debit card to make purchases exceeding $1,000 in the game without her authorization.

11.     Upon information and belief, there are millions of PlayStation 4 users and there are thousands of putative class members with unauthorized charges made by their minor children.

12.     Upon information and belief, Defendant Sony Interactive Entertainment America LLC (SIE), is a limited liability corporation formed under the laws of Delaware.[1]

---

[1] https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint

13.     SIE is a wholly owned subsidiary of Sony Corporation of America, a corporation formed under the laws of the State of New York with headquarters in New York, NY, according to its website.[2]

14.     On information and belief, because SIE is a wholly owned subsidiary of Sony Corporation of America, Sony Corporation is the sole member of SIE.

15.     According to its website, SIE's principal place of business is in San Mateo, California.[3]

16.     According to its website SIE's "is responsible for the PlayStation brand and family of products and services [that] includes [the] PlayStation 4 [and] PlayStation Store."[4]

### III.     JURISDICTION AND VENUE

17.     For purposes of corporate citizenship, Defendant is a citizen of New York as that is the principal place of business of its sole member.

18.     Defendant has its principal place of business in San Mateo, California, transacts business in this District, has subjected itself to this Court's jurisdiction through such activity, and a substantial part of the events and omissions giving rise to this claim occurred in this District. Accordingly, venue is proper in this District under 28 U.S.C. § 1391.

19.     This Court has personal jurisdiction over Defendant SIE, because at all times relevant to this action, SIE has engaged in substantial business activities and has its headquarters located in the State of California which can be regarded as the home corporate forum.[5] Therefore, SIE has sufficient minimum contacts with this state and at all times relevant to this action SIE has

---

[2] https://www.sony.com/en_us/SCA/who-we-are/overview.html

[3] https://www.playstation.com/en-us/corporate/about/

[4] *Id*.

[5] Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (U.S. 2011)

engaged, either directly or indirectly, in the business of marketing, promoting, distributing, and selling of its products as well as contracting with D.W. and administering the user accounts in California, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a class action involving more than 100 Class Members. Plaintiff and Defendant are citizens of different states and the amount in controversy, in the aggregate, exceeds the sum of $5 million exclusive of interest and costs.

## IV.     FACTUAL ALLEGATIONS

21.     SIE oversees the development and marketing of video games, consoles, and products in the United States and Canada.

22.     SIE's video game products include, among others: games, wireless controllers, wireless stereo headsets, and PlayStation 4 video game consoles.

23.     SIE has its principle place of business in California, therefore granting this court with personal jurisdiction.

24.     Upon information and belief, SIE sells, advertises, contracts, and administers the PlayStation Network and online Store in the State of California and throughout the United States.

25.     SIE offers an online and network service called the PlayStation Network (PSN), which includes the PlayStation Store, an online store that allows users and consumers buy and download video games and digital game features.

26.     According to the PlayStation website, by creating an account in the PSN users can play games online as well as buy content and services such as levels for games, movies, and television shows.

27.     Through the PlayStation Store, users can download video games as well as other digital content to be used on the PlayStation 4 console.

28.     In order to use the PSN and download video games, users need to make and register an online account and to agree with the PSN Terms of Service and User Agreement, which state that the user needs to have reached the legal age of majority, or, if under the age of majority, have the consent of the parent or legal guardian.

29.     SIE does not employ effective measures to prevent minors from creating these accounts.  Minors frequently use their parents' credit or debit cards as a means of securing payments for in game purchases.

30.     All purchases made on the PSN service, including debit or credit cards and PayPal, are made through the PSN account wallet. The funds added to the wallet to make purchases are non-refundable and non-transferable, except as required by law according to the PSN user agreement.[6]

31.     Users of the PSN can buy or download for free certain games through the PlayStation Store and play the games using the PlayStation 4 platform.

---

[6] "All transactions made through your Account or an associated Account of your child are solely between you and SIE LLC. By completing a transaction through your Account or allowing a transaction to take place through an associated Account of your child, you are (i) agreeing to pay for all transactions made by you or your children, including recurring charges for subscriptions that are not cancelled; (ii) authorizing SIE LLC to deduct from the wallet and charge your credit card or other applicable payment instrument or payment mechanism all fees due and payable for all your transactions; and (iii) agreeing to any applicable Usage Terms and terms associated with use of the particular PSN Service. All transactions are final upon their completion and may be deemed to be governed by law and regulatory requirements applicable at the time the transaction was completed. PAYMENTS FOR ACCESS TO CONTENT OR SERVICES ARE NOT REFUNDABLE EXCEPT WHERE THE LAW REQUIRES THAT THEY ARE REFUNDABLE." https://www.playstation.com/en-us/network/legal/terms-of-service/

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint

32.     One example of a game designed to entice minors into making in-game purchases is Fortnite.  As of the writing of this complaint, it is estimated that there are 200 million users of the game Fortnite.[7]

33.     Epic Games, Inc. ("Epic") is a developer and publisher of computer games and gaming software.

34.      Epic developed and published the battle royal genre online multi-player video game Fortnite.

35.     Fortnite was first released in a limited manner in October 2013.

36.     Fortnite was released broadly on July 25, 2017, but it wasn't until September 26, 2017 that Fortnite's free-to-play "Battle Royale" game mode was released to the public.

37.     Fortnite's Battle Royale mode is a survival action game in which players team up to battle each other until the last team stands, while interacting with the environment in the game by gathering resources and building fortified structures to defend herself from the attacks of enemies.

38.     Fortnite's Battle Royale mode is free to download and play.

39.     However, players in Fortnite need to buy V-Bucks, a type of virtual token, to make in-game purchases that include, but not limited to, "skins" for the players' characters and the game feature known as the Battle Pass.

40.     According to Epic's website, the Battle Pass is "a method Battle Royale players can use to gain access to exclusive challenges and in-game rewards."

41.     While using the Battle Pass, players in the Battle Royale mode earn Battle Stars that represent the player's rank or level, which allows to further have access to different rewards.

[7] https://www.statista.com/statistics/746230/fortnite-players/

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint

42.     The purpose of the skins or different costumes the players' characters can use is merely cosmetic.

43.     Epic markets the Fortnite video game as free to play without warning adult consumers and parents of the in-game purchase features, directly inducing minors to make in-game purchases without authorization from their parents or legal guardians.[8]

44.     Brandi Crawford is the mother and natural parent of C.R.B. and is a citizen of Mississippi.

45.     At all times relevant to the events described in this complaint, C.R.B. was a 10 year-old and a minor according to California law. Cal. Fam. Code § 6500.

46.     C.R.B.. made an account with the PlayStation Network all by himself without his parents' authorization that required among other things, selecting a user name and password, providing contact and other information, and agreeing with the PlayStation Network Terms of Service and User Agreement.

47.     C.R.B. used his mother's debit card to pay for the PlayStation Network services.

48.     The PlayStation Network User Agreement provides that in order to agree with the terms of service, the user must be an adult according to the state or country registered on the account.[9]

49.     C.R.B. downloaded the Fortnite video game onto his PlayStation 4 and used the free Battle Royale mode of the game.

---

[8] https://www.youtube.com/watch?v=2gUtfBmw86Y

[9] https://www.playstation.com/en-us/network/legal/terms-of-service/

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint

50.     C.R.B. used his mother's debit card without her permission and spent more than a thousand dollars ($1,000) purchasing Fortnite V-bucks, using his PlayStation 4 through his PlayStation Network account.

51.     Plaintiff sought a refund of the charges from Defendant and was denied.

52.     SIE is the owner and administrator of the PlayStation Network and Store services.

53.     The PSN User Agreement establishes that all transactions made through the service are non-refundable except as required by law.

54.     Plaintiff's minor's unauthorized V-bucks purchases are subject to California law's right to disaffirmance since it was a minor who made the purchases using credit and debit cards without his parents' authorization. Cal. Fam. Code § 6710.

55.     SIE's transactions with minors also necessarily involve entering into contracts with minors regarding property that is fundamentally not in the minors' possession or control, since SIE collects funds from debit cards, credit cards, PayPal accounts, or other sources, some of which are not in the minor's possession or control. In fact, some of the funds are in the possession and control of, invariably, the minor's parents and the card issuers.

56.     On information and belief, other minors seeking to disaffirm agreements with SIE are denied the right to disaffirmance from the V-bucks purchase transactions. SIE states in the User Agreement that all transactions are non-refundable, even with respect to minors, despite a minor's right to disaffirm the agreement under California law.

57.     As set forth above, SIE makes it nearly impossible for minors to obtain refunds for their transactions.

58.     Plaintiff has lost money and been injured and suffered violations of California law in connection with V-bucks purchase transactions that are either void or voidable under California Law.

9

59.     Plaintiff's experience with SIE is like that of other parents of minors who have purchased V-bucks in the Fortnite video game through the PSN and Store.

60.     On information and belief, Defendant has numerous other games which operate in a similar manner to Fortnite in that minor users make in-game purchases in conjunction with those games.  Once again, minors often make such purchases without the permission of their parents, using their parents' debit or credit card without permission.

61.     SIE offers Apps in many genres, including travel, business, education, finance, entertainment and gaming. Games are the most downloaded of all genres. Apps can be downloaded for free, or for a licensing fee, that ranges from $.99 to $9.99 or more. It is the gaming Apps that SIE targets and sells to minor children that are the subject of this action.

62.     SIE is the sole conduit of Apps to be used on the PSN. Apps are either developed by SIE or licensed to SIE by independent App developers. The App developers license their Apps to SIE for sale to consumers, and SIE shares the revenues earned from the sale of the App, or from the sale of In-App Purchases, with the App developer.

63.     SIE supervises and controls the function and operation of the Apps it sells.  Before an App is made available by SIE, SIE staff test the App and confirm its compliance with dozens of rules that SIE unilaterally imposes. If SIE deems an App noncompliant with SIE's rules, SIE will not make the App available for sale.

64.     In all instances relevant to this action, the sale of the App and/or any Game Currency is a transaction directly between SIE and the consumer. SIE, and SIE alone, is the provider of the App to the user. SIE charges its customers' credit (or debit) card or PayPal account, and no App developer ever receives an SIE App customer's credit (or debit) card number or PayPal account information.

65.     Anyone can open an account to purchase (i.e. license) content from SIE.  Opening

an account requires, among other things, selecting a user name and password, providing certain contact and other information, and agreeing to SIE's Terms & Conditions. Users may then make purchases in any of a number of ways, including supplying SIE with a credit or debit card number or PayPal account. For users who specify credit or debit card or PayPal payment, SIE automatically draws funds from the account holder's credit or debit card or PayPal account.

66.     As alleged above, many games are targeted to young children, and are free or cost a nominal charge to download. These games, however, are often designed solely to lure children to purchase Game Currency in order to meet the objectives of the game. We sometimes refer to these free Apps in this complaint as "bait Apps."

67.     Such games, by design, are highly addictive. They were developed strategically to induce purchases of Game Currency. For example, the game Fortnite is free to download. To enhance the gaming experience, users can purchase V-Bucks which allow the user to obtain in-game equipment and other enhancements.  V-Bucks cost real money. Embedded in the Fortnite bait App are various methods to purchase V-Bucks.

68.     SIE is aware that minors purchase V-Bucks from the online store. This is desired, as Fornite is a tremendous moneymaker for SIE. Many children have purchased thousands of dollars of Game Currency over the course of a brief period of time.

69.     Fortnite is by no means the only bait App that preys on minors in such a manner. SIE offers many games that use the same bait-and-switch business scheme as Fortnite. SIE entices children with a free download of a gaming platform that then offers the sale of irresistible Game Currency in order to enjoy the game as it was designed to be "played."

70.     The targeting of children by SIE and inducing them to purchase, without the knowledge or permission of their parents, millions of dollars of Game Currency, is unlawful exploitation in the extreme. Fortunately for the members of the Class, such purchases of Game

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint

Currency constitute voidable contracts because they were entered into with minors.

71.     SIE has not offered to return to its account holders any of the millions of dollars it received from their minor children's purchases of Game Currency.

## V.   CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action as a class action for declaratory, equitable, and monetary relief pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States who paid for a purchase of Game Currency made by their minor children without their knowledge or permission (the "Class"). Excluded from the Class are SIE; any entity in which it has a controlling interest; any of its parents, subsidiaries, affiliates, officers, directors, employees and members of their immediate families; and members of the federal judiciary.

73.     The members of the Class are ascertainable, and are so numerous that joinder is impracticable. Plaintiff believes there are thousands of members of the Class, whose names and addresses are in SIE's records.

74.     There are questions of law or fact common to the Class, and such questions predominate over individual questions. SIE pursued a common course of conduct toward the Class as alleged. This action arises out of a common nucleus of operative facts. Common questions include:

(a)     Whether SIE sold Game Currency;

(b)     Whether SIE sold Game Currency to minors;

(c)     Whether SIE knew that many gaming Apps it sells are designed to induce minors to purchase Game Currency;

(d)     Whether SIE intended for minors to purchase such Game Currency without the knowledge or permission of the minors' parents or guardians;

(e)     Whether SIE's sales to minors of Game Currency constitute voidable contracts;

(f)    Whether SIE's scheme to induce minors to purchase Game Currency violates California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, and Unfair Competition Law, Business & Professions Code § 17200 et seq.;

(g)    Whether SIE owed and breached a duty of good faith and fair dealing with respect to its contract with Plaintiff and the Class;

(h)    Whether SIE was unjustly enriched by its scheme; and

(i)    Whether Plaintiff and the Class have been damaged, and if so, in what amount.

75.    Plaintiff's claims are typical of the claims of other members of the Class, and there is no defense available to SIE that is unique to Plaintiff. Plaintiff paid more that $1,000 to SIE for purchases of Game Currency made by their minor children without their knowledge or permission.

76.    Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has the ability to assist and adequately protect the rights and interests of the Class during the litigation. Further, Plaintiff is represented by counsel who are competent and experienced in this type of class action litigation.

77.    This class action is not only the appropriate method for the fair and efficient adjudication of the controversy, it is the superior method because:

(a)    The joinder of thousands of geographically diverse individual class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and litigation resources;

(b)    There is no special interest by class members in individually controlling prosecution of separate causes of action;

(c)    Class members' individual claims are relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual class members addressing their loss;

(d)    When SIE's liability has been adjudicated, claims of all class members can be determined by the Court and administered efficiently in a manner that is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of many individual cases;

(e)    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

13

(f)     This class action will assure uniformity of decisions among class members;

(g)     Without this class action, restitution will not be ordered and SIE will be able to reap the benefits or profits of its wrongdoing; and

(h)     The resolution of this controversy through this class action presents fewer management difficulties than individual claims filed in which the parties may be subject to varying indifferent adjudications of their rights.

78.     Further, class certification is appropriate because SIE has acted, or refused to act, on grounds generally applicable to the Class, making class-wide equitable, injunctive, declaratory and monetary relief appropriate. In addition, the prosecution of separate actions by or against individual members of the Class would create a risk of incompatible standards of conduct for SIE and inconsistent or varying adjudications for all parties. A class action is superior to other available methods for the fair and efficient adjudication of this action.

## VI.     CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

79.     California's substantive laws apply to every member of the Class, regardless of where in the United States the class member resides. SIE imposes on its account holders a set of Terms and Conditions that must be accepted before becoming an account holder and before making any purchases or downloads from SIE's Online Store. Among such Terms and Conditions is the following:

> The laws of the State of California, without regard to conflict-of-law rules, govern this agreement and any dispute between you and the Sony Entities. Any dispute not subject to arbitration and not initiated in small claims court may be brought by either party in a court of competent jurisdiction in either the Superior Courts for the State of California in and for the County of San Mateo or in the United States District Court for the Northern District of California. Each party submits itself to the exclusive jurisdiction and venue of those courts, and waives all jurisdictional, venue and inconvenient forum objections to those courts. In any litigation to enforce any part of this agreement, all costs and fees, including attorney's fees, will be paid by the non-prevailing party.

80.     Further, California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and

Credit Clause, Art. IV § 1 of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class Members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

81.     SIE's United States headquarters and principal place of business is located in California. SIE also owns property and conducts substantial business in California. Therefore California has an interest in regulating SIE's conduct under its laws. SIE's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

82.     California is also the state from which SIE's alleged misconduct emanated. This conduct similarly injured and affected Plaintiff and all other Class Members.

83.     The application of California law to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

**VII.  CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
(Declaratory Judgment)

84.     Plaintiff repeats and re-allege herein the foregoing allegations.

85.     All Game Currency that SIE presents for sale constitutes an offer to enter into a sales contract.

86.     All Game Currency purchased by a minor constitutes acceptance of SIE's offer.

87.     Every payment made by the members of the Class for the purchase of Game Currency by their minor children constitutes consideration for the provision of the Game

Currency.

88.     Accordingly, all transactions that are the subject of this Complaint are possessed of the three elements of a contract, i.e., offer, acceptance and consideration.

89.     Under California law, minors have the right to disaffirm contracts such as those at issue here. Cal. Fam. Code § 6710.

90.     A parent or guardian may disaffirm a contract on behalf of a minor.

91.     The contracts between Defendant and the members of the Class are voidable – a fact that Defendant denies.

92.     Accordingly, there is an actual controversy between the parties, requiring a declaratory judgment.

93.     This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 et seq., seeking a determination by the Court that:

(a) this action may proceed and be maintained as a class action;

(b) the sales contracts between Defendant and the children of the class members, relating to the purchase of Game Currency, are voidable at the option of the respective class members on behalf of their minor children;

(c) if the class members elect to void the contracts, they will be entitled to restitution and interest thereon;

(d) an award of reasonable attorneys' fees and costs of suit to Plaintiff and the Class is appropriate; and

(e) such other and further relief as is necessary and just may be appropriate as well.

**SECOND CAUSE OF ACTION**
(Violation of the California Consumers Legal Remedies Act)

94.     Plaintiff repeats and re-allege herein the foregoing allegations.

95.     At all times relevant hereto, there was in full force and effect the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750.

16

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint

96.     Plaintiff and the other Class Members are consumers within the meaning of Cal. Civ. Code § 1761(d).

97.     SIE violated the CLRA's proscription against the concealment of the characteristics, use, benefit, or quality of goods by actively marketing and promoting certain gaming Apps as "free" or nominal (e.g., 99¢) with the intent to induce from minors the purchase of Game Currency. Specifically, by promoting such bait Apps in the manner alleged herein, SIE has violated: (a) § 1770(a)(5)'s proscription against representing that goods have uses or characteristics they do not have; (b) § 1770(a)(7)'s proscription against representing that goods are of particular standard or quality when they are of another; (c) § 1770(a)(14)'s proscription against "Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

98.     Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material facts.

99.     SIE owed a duty to disclose material facts about the Game Currency embedded in games it marketed, advertised and promoted to children as "free" or nominal. SIE breached such duty as alleged in this Complaint.

100.    Plaintiff and the Class suffered actual damages as a direct and proximate result of SIE's actions, concealment and/or omissions in the advertising, marketing and promotion of its bait Apps, in violation of the CLRA, as evidenced by the substantial sums SIE pocketed.

101.    Plaintiff, on behalf of herself and for all those similarly situated, demand judgment against SIE for equitable relief in the form of restitution and/or disgorgement of funds

17

paid to SIE.

102.    In accordance with § 1782(a) of the CLRA, on March 11, 2020, Plaintiff's counsel served SIE, by certified mail, return receipt requested, with notice of its alleged violations of the CLRA.

103.    If SIE does not fully meet the demand set forth in that letter, then Plaintiff will amend or seek leave to amend this complaint in order to seek the following relief under CLRA § 1780, for SIE's violations of CLRA § 1770(a)(14):

- actual damages under Cal. Civ. Code§ 1780(a)(l);

- punitive damages under Cal. Civ. Code§ 1780(a)(4);

- attorneys' fees and costs under Cal. Civ. Code§ 1780(d); and

- any other relief the Court deems proper under Cal. Civ. Code § 1780(a)(5).

**THIRD CAUSE OF ACTION**
(Violation of Bus. & Prof. Code § 17200 et seq.)

104.    Plaintiff repeats and re-allege herein the foregoing allegations.

105.    Plaintiff brings this cause of action on behalf of herself, on behalf of the other Class Members, and in their capacity as a private attorneys general against SIE for its unlawful, unfair, fraudulent and/or deceptive business acts and practices pursuant to California's Unfair Competition Law (UCL), Business & Professions Code § 17200 et seq., which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

106.    Plaintiff asserts these claims as a representative of an aggrieved group and as private attorneys general on behalf of the general public and other persons who have expended funds that SIE should be required to reimburse under UCL § 17200 et seq.

107.    This claim is predicated on the duty to refrain from unlawful, unfair and deceptive

18

business practices. Plaintiff and the other Class Members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.

108.    The UCL § 17200 et seq. prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices"; (b) "unfair fraudulent business acts or practices"; and (c) "unfair, deceptive or misleading advertising."

109.    SIE violated the UCL by engaging in conduct that violated each of the three prongs identified by the statute, as set forth throughout this Complaint.

110.    SIE committed an unlawful business act or practice in violation of the UCL § 17200 et seq. when it violated the CLRA.

111.    SIE committed fraudulent business acts and practices in violation of the UCL §§ 17200 and 17500 et seq. by actively advertising, marketing and promoting its bait Apps as "free" or nominal with the intent to lure minors to purchase Game Currency in a manner likely to deceive the public.

112.    SIE has violated the "unfairness" prong. According to the Federal Trade Commission guidelines: "To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers herself could not reasonably have avoided." FTC Policy Statement On Unfairness, appended to International Harvester Co., 104 F.T.C. 949, 1070 (1984).

113.    As alleged in this complaint, Plaintiff and the Class have suffered substantial actual economic harm. SIE's practices produce no countervailing benefits to consumers or competition that outweigh such substantial harm to Plaintiff and the Class. Because the injuries alleged occurred without Plaintiff' and the other Class Members' knowledge or permission, Plaintiff and the Class,

19

a fortiori, could not have avoided such injuries. One cannot avoid something about which one is unaware. Accordingly, SIE has violated the "unfairness" prong of the UCL.

114.    SIE's deceptive practices were specifically designed to induce the children of Plaintiff and the other members of the Class to download the bait Apps and then purchase Game Currency.

115.    SIE's practices have deceived and/or are likely to deceive Plaintiff and members of the consuming public.

116.    As a direct and proximate cause of SIE's violation of the UCL, Plaintiff and the Class have suffered harm in that they have not been reimbursed for the purchases of Game Currency their children made from SIE without their knowledge or permission.

117.    As a direct and proximate result of SIE's violation of the UCL, SIE has been unjustly enriched and should be required to make restitution to Plaintiff and the Class or disgorge its ill-gotten profits pursuant to the UCL § 17203.

118.    Plaintiff, on behalf of herself and for all others similarly situated, demand judgment against SIE for injunctive relief in the form of restitution, and/or disgorgement of funds paid to SIE as alleged herein.

**FOURTH CAUSE OF ACTION**
(Restitution/Unjust Enrichment/Money Had and Received (alternative claim))

119.    Plaintiff repeats and re-allege herein the foregoing allegations.

120.    Plaintiff and the Class have conferred benefits on SIE by paying for the Game Currency their children purchased from SIE without their knowledge or permission.

121.    SIE knowingly and willingly accepted those monetary benefits from Plaintiff and the Class.

122.    Under the circumstances alleged herein, it is inequitable for Defendant to retain

such benefits at the expense of Plaintiff and the Class.

123.    SIE has been unjustly enriched at the expense, and to the detriment of, Plaintiff and the Class by wrongfully collecting money to which SIE, in equity, is not entitled.

124.    Plaintiff and the Class are entitled to recover from SIE all amounts wrongfully collected and improperly retained by SIE, plus interest thereon.

125.    As a direct and proximate result of SIE's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from SIE of the benefits conferred by Plaintiff and the Class.

126.    As a direct and proximate result of SIE's misconduct as set forth herein, SIE has been unjustly enriched.

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class defined herein;

B.    Designating Plaintiff as representative of the Class and their counsel as class counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against SIE;

D.    As to the First Cause of Action, entering a Declaratory Judgment determining that the sales contracts between Defendant and the minor children of Class Members relating to the purchase of Game Currency are voidable at the option of the respective Class Members on behalf of their minor children, and that if the Class Members elect to void the contracts, they will be entitled to restitution, attorneys' fees, costs and interest thereon;

E.    As to the Second through Fifth Causes of Action, awarding Plaintiff and members of the Class their individual damages and attorneys' fees and allowing costs, including interest thereon; and/or restitution and equitable relief;

F.    As to all Causes of Action, an injunction discontinuing the Game Currency sales practices targeting minors complained of herein, and awarding attorneys' fees and allowing costs, including interest thereon; and

G.    Granting such further relief as the Court deems just.

## JURY DEMAND

### PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Dated: March 11, 2020

**Excolo Law, PLLC**

by:____/s/ Keith Altman_____
Keith Altman

Keith Altman (SBN 257309)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
kaltman@excololaw.com

22

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint

## DECLARATION OF KEITH ALTMAN
## PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)

I, Keith Altman, declare as follows:

1. I submit this declaration pursuant to section 1780 (d) of the California Consumers Legal Remedies Act. I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.

2. Defendant Sony Interactive Entertainment, LLC is a Delaware Corporation with its principle place of business at 2207 Bridgepointe Pkwy. San Mateo, CA 94404.

3. This action is being commenced in the Northern District of California. Defendant's principle place of business is located within the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on March 11, 2020 in Southfield, MI.

/s/ Keith Altman
Keith Altman

Crawford, et al.  v. Sony Interactive Entertainment LLC, Class Action Complaint