1  LUANNE SACKS (SBN 120811)
   lsacks@srclaw.com
2  MICHELE FLOYD (SBN 163031)
   mfloyd@srclaw.com
3  MIKE SCOTT (SBN 255282)
   mscott@srclaw.com
4  **SACKS, RICKETTS & CASE LLP**
   177 Post Street, Suite 650
5  San Francisco, CA 94108
   Tel: 415-549-0580
6  Fax: 415-549-0640

7  *Attorneys for Defendant*
   Sony Interactive Entertainment LLC
8

9                **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11                     **SAN FRANCISCO**

12

13 | BRANDI CRAWFORD on behalf of herself and all others similarly situated, | Case No.: 3:20-cv-01732-JD |

14 |  | **DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |

Plaintiff,

15     vs.

16 SONY INTERACTIVE ENTERTAINMENT, LLC,

17                                              Date: September 24, 2020
                                               Time: 10:00 a.m.
18              Defendant.                      Courtroom 11, 19th Floor

19                                              Judge:  Hon. James Donato

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 2

II.    STATEMENT OF FACTS ........................................................................................ 3

       A.     Plaintiff's Complaint............................................................................... 3

       B.     The Challenged Purchases Were Made On Both Plaintiff's and C.R.B.'s PSN
              Accounts ................................................................................................... 4

       C.     Plaintiff Agreed to Arbitrate Her Claims ............................................... 4

              1.     The PSN ToSUA Requires Arbitration and Allows Consumers to Opt
                     Out................................................................................................ 4

              2.     The SSLA Also Requires Arbitration and Allows Consumers to Opt-
                     Out................................................................................................ 6

III.   ARGUMENT ............................................................................................................ 8

       A.     The Court Must Compel Arbitration of Plaintiff's Claims Because She Agreed
              to Arbitrate ............................................................................................... 8

       B.     Plaintiff Assented to the Broad Arbitration Clauses of both the PSN ToSUA
              and the SSLA .......................................................................................... 10

       C.     C.R.B. Assented to the PSN ToSUA, Which Contains a Broad Arbitration
              Clause ...................................................................................................... 12

       D.     Any Remaining Threshold Issues of Arbitrability Under the PSN ToSUA and
              the SSLA Have Been Delegated To The Arbitrator ............................. 12

       E.     The Litigation Should Be Stayed Pending Arbitration ........................ 15

IV.    CONCLUSION........................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880 (2017)................................................................. 13

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWx), 2015
WL 5311085 (C.D. Cal. Sept. 10, 2015)............................................................................... 11

*Aceves v. Autonation, Inc.*, 317 F. App'x. 665 (9th Cir. 2009) ...................................................... 14

*Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165 (N.D. Cal. Apr. 11,
2011)................................................................................................................................. 11, 12

*AT&T Mobility v. Concepcion,* 563 U.S. 333 (2011) ........................................................................ 9

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)............................................ 13

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .................................................................. 15

*Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000)................................ 9

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).............................................................. 10

*DirecTV, Inc. v. Imburgia*, 577 U.S. ---, 136 S. Ct. 463 (2015) ...................................................... 8

*Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172 (W.D. Wash. 2014) ....................................... 11

*Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007) .................................................... 11

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995)....................................................... 10, 13

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................... 11

*Grear v. Comcast Corp.*, No. C 14–05333 JSW, 2015 WL 926576 (N.D. Cal. Mar. 3, 2015).... 15

*Hauenstein v. Softwrap Ltd.*, No. C07-0572-MJP, 2007 WL 2404624 (W.D. Wash. Aug. 17,
2007)....................................................................................................................................... 11

*Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. ---, 139 S. Ct. 524, 202 L. Ed. 2d
480 (2019) ............................................................................................................................... 12

*Huff v. Liberty League Int'l, LLC*, No. EDCV 08-1010-VAP (SSx), 2009 WL 1033788 (C.D.
Cal. Apr., 14, 2009)................................................................................................................ 11

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010 (9th Cir. 2004) ...................... 9, 10

*Loewn v. Lyft, Inc.*, 129 F. Supp. 3d 945 (N.D. Cal. 2015) .......................................................... 10

*Malone v. Super. Ct.*, 226 Cal. App. 4th 1551 (2014) .................................................................. 13

*Martinez v. Ross Stores, Inc.*, No. 18-cv-04636-JD, 2019 WL 4221704  (N.D. Cal. Sept. 5,
2019)..................................................................................................................................... 9, 10

*McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11,
2017)....................................................................................................................................... 14

*MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4 (9th Cir. 2014) ...................................................... 15

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985) ....................... 9

*Mohamed v. Uber Techs, Inc.*, 848 F.3d 1201 (9th Cir. 2016)............................................... 13, 14

*Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2010).................................................................... 13, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)................................... 9

*Norcia v. Samsung Telecomm. Am., LLC*, No. 14-CV-00582-JD, 2014 WL 4652332 (N.D. Cal.
Sept. 18, 2014) ....................................................................................................................... 10

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)...................................................... 1, 13

*Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233 (2016) .......................................................... 13

*Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367 (S.D. Fla. 2011)............................................. 11

*Selden v. Airbnb, Inc.*, No. 16-cv-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016)...... 11

ii

DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CASE NO. 3:20-cv-01732-JD

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ............................... 10

*Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231 (2014) ........................................... 13

*Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014)............................................................................................................. 11

*Vernon v. Qwest Commc'ns Int'l, Inc.,* 857 F. Supp. 2d 1135 (D. Colo. 2012) .......................... 10

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989)..... 9

*Williams v. Eaze Solutions, Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019) ........................ 9, 10, 15

**Statutes**

9 U.S.C. § 1 ................................................................................................................... passim

9 U.S.C. § 2 ........................................................................................................................ 8, 9

9 U.S.C. § 3 ........................................................................................................................... 15

9 U.S.C. § 4 ........................................................................................................................... 10

Cal. Bus. & Prof. Code § 17200 ............................................................................................ 3

Cal. Civ. Code § 1750 ........................................................................................................... 3

California Family Code § 6710.............................................................................................. 3

DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CASE NO. 3:20-cv-01732-JD

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

PLEASE TAKE NOTICE that at 10:00 a.m. on September 24, 2020, or as soon thereafter as this matter may be heard before the Honorable James Donato in Courtroom 11, 19th Floor, of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Sony Interactive Entertainment LLC ("SIE") will, and hereby does, move pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA") for: (1) an order compelling Plaintiff to arbitrate her claims against SIE pursuant to section 4 of the FAA; and (2) an order staying this litigation pending arbitration under section 3 of the FAA.  This Motion is made on the following grounds: (1) Plaintiff assented to the PlayStation™Network Terms of Service and User Agreement ("PSN ToSUA") and the PlayStation®4 System Software License Agreement ("SSLA"), both of which contain mandatory arbitration provisions; and (2) both arbitration provisions "clearly and unmistakably" delegate all issues pertaining to the "validity, enforceability or scope" of the arbitration agreement to the arbitrator.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010) (holding "clear and unmistakable" delegation of threshold arbitrability issues enforceable).

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Ryan King filed herewith, the Court record, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on this Motion.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff agreed to arbitrate her claims against SIE; and

2.      Whether the delegation clauses in the two arbitration provisions at issue here "clearly and unmistakably" delegate authority to the arbitrator to determine the gateway issues of enforceability, validity, and scope.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        This lawsuit cannot proceed in this forum because the claims asserted in it are subject to

4  binding, contractual arbitration.  All of the causes of action that Plaintiff Brandi Crawford

5  ("Plaintiff") asserts against Defendant SIE relate to purchases of video game currency (Fortnite

6  "V-Bucks") that her son, C.R.B., allegedly made with her debit card but without her

7  authorization.  Plaintiff alleges that C.R.B. made the challenged purchases through the

8  PlayStation™Network ("PSN") Store using their PlayStation®4 entertainment console ("PS4").

9  Both Plaintiff and her son have PSN accounts and both agreed to the PSN Terms of Service and

10  User Agreement ("PSN ToSUA") when they created their PSN accounts.  The PSN ToSUA

11  contains an arbitration agreement that requires arbitration of all disputes "regarding any PSN

12  Services or the use of any devices sold by a Sony Entity to access PSN Services."  Use of the PS4

13  is also governed by a contract containing an arbitration provision, the System Software Licensing

14  Agreement ("SSLA").  Like the PSN ToSUA, the SSLA must be accepted during the console

15  set-up process and the console cannot be used absent assent.

16        On a motion to compel arbitration, a court's inquiry is limited to two issues.  First, the

17  Court must determine whether the plaintiff assented to the arbitration provision.  Here, the

18  evidence of assent is indisputable because it is impossible to create and use a PSN account

19  without first assenting to the PSN ToSUA, and it is undisputed that both Plaintiff and her son

20  have PSN accounts.  Likewise, it is impossible to set up and use a PS4 without first accepting the

21  SSLA and Plaintiff alleges that her son used their PS4 to make the challenged purchases.

22        Second, a court may have to determine whether the plaintiff's claims fall within the scope

23  of the agreement to arbitrate.  Here, however, the parties delegated the issue of scope by agreeing

24  that all issues pertaining to the "validity, enforceability or scope of this Binding Individual

25  Arbitration section" would be resolved by the arbitrator.  Under binding United States Supreme

26  Court precedent, a "clear and unmistakable" contractual provision that delegates threshold issues

27  to the arbitrator, such as the contractual language here, is binding and enforceable.  Thus, if

28
DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CASE NO. 3:20-cv-01732-JD

Plaintiff raises any threshold issues regarding arbitrability, the arbitrator, and not this Court, must resolve them.  Because assent is established and the delegation clause is "clear and unmistakable," this Court must compel arbitration.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Complaint

Plaintiff alleges that her minor child, C.R.B., created a PSN account on their PS4 so that he could play the video game Fortnite.  Compl., ¶¶ 7-8.  She acknowledges that her son was required to have a PSN account in order to download and play the game and was required to agree to the PSN ToSUA in order to create the PSN account.  *Id.*, ¶¶ 7, 28 ("In order to use the PSN and download video games, users need to make and register an online account and to agree with the PSN Terms of Service and User agreement . . . ."), 46 ("C.R.B made an account with the PlayStation Network . . . and agree[d] with the PlayStation Network Terms of Service and User Agreement").  Plaintiff then alleges that her son used her debit card without her permission to purchase over $1,000 worth of "V-Bucks," which is an in-game currency for Fortnite.  *See id.*, ¶¶ 7-8, 10, 44-50.  When she contacted SIE for a refund, SIE declined.  *Id.*, ¶ 51.  Plaintiff now asserts that C.R.B. can disaffirm the challenged purchases under California Family Code § 6710, but it is Plaintiff who is suing to obtain a refund of the amounts debited from her bank account.  *Id.*, ¶ 54.

Based on these allegations, Plaintiff asserts four claims for relief:  (1) declaratory judgment, seeking a declaration that the challenged charges can be disaffirmed; (2) violation of the California Consumer Legal Remedies Act (CLRA) (Cal. Civ. Code §§ 1750 *et seq.*); (3) violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); and (4) an alternative claim for restitution, unjust enrichment, and money had and received.  *Id.*, ¶¶ 84-126.  Plaintiff brings her causes of action on behalf of the following putative class:

> All persons in the United States who paid for a purchase of Game Currency made by their minor children without their knowledge or permission (the "Class"). Excluded from the Class are SIE; any entity in which it has a controlling interest; any of its parents, subsidiaries, affiliates, officers, directors, employees and members of their immediate families; and members of the federal judiciary.

*Id.*, ¶ 72.

**B.    The Challenged Purchases Were Made On Both Plaintiff's and C.R.B.'s PSN Accounts**

SIE maintains PSN account records in the ordinary course of business that identify PSN accounts and include records of transactions made through those accounts.  Declaration of Ryan King ("King Decl."), at ¶ 7.  Consistent with Plaintiff's allegations, the records for her son's account (C.R.B.) confirm that he created a PSN account on October 1, 2019.  Id., ¶ 8; see Compl., ¶¶ 7, 46.  SIE's records also confirm that Plaintiff herself created a PSN account years earlier, on April 28, 2013.  King Decl., ¶ 7.

Although Plaintiff alleges that C.R.B. used her debit card "to make purchases exceeding $1,000 in the game without her authorization," (Compl., ¶ 10), the transaction records for C.R.B's PSN account show nineteen purchases between December 6, 2019 and February 29, 2020 that total $430.51.[1]  King Decl., ¶ 8.  There are also several purchases made on Plaintiff's PSN account—thirteen of them—starting on February 29, 2020 and continuing until March 1, 2010 totaling $413.02.  *Id.*, ¶ 7.  The combined total, then, is $843.53, short of the $1,000 alleged in the Complaint.  *See id.*, ¶¶ 7, 8; see Compl., ¶ 10 (alleging challenged charges exceed $1,000).  In any event, based on SIE's records, and contrary to the allegations of the Complaint, it appears that the challenged transactions were made through both Plaintiff's and C.R.B.'s accounts.

**C.    Plaintiff Agreed to Arbitrate Her Claims**

**1.    The PSN ToSUA Requires Arbitration and Allows Consumers to Opt Out**

The PSN is a digital entertainment service that can be accessed through the PS4.  King Decl., ¶ 5.  Accountholders can utilize a number of services through the PSN, including the online marketplace (the PlayStation™Store), a premium subscription service for enhanced gaming and social features (PlayStation®Plus), movie streaming, rentals, and purchases (PlayStation™Video), music streaming (PlayStation™Music), and a cloud-based gaming service (PlayStation™Now).  *Id.*

---

[1] Fifteen of the purchases were made on February 28, 2020 and February 29, 2020.  King Decl., ¶ 8.

1    Consumers must create a PSN account before they can access PSN services and it is

2    impossible to create a PSN account without first assenting to the PSN ToSUA.  King Decl. ¶ 6.

3    The text of the PSN ToSUA is presented to the consumer on-screen during the account creation

4    process and consumers must accept its terms by clicking an "Accept" button.  *Id.*  Failure to do

5    so terminates the account registration process and access to the PSN is denied.  *Id.*

6    The PSN ToSUA includes a broad arbitration provision with a class waiver and alerts

7    consumers to that fact in bold, capitalized text appearing on the first page of the agreement:

8    **THIS AGREEMENT CONTAINS A BINDING INDIVIDUAL
     ARBITRATION AND CLASS ACTION WAIVER PROVISION IN THE
     "BINDING INDIVIDUAL ARBITRATION" SECTION THAT AFFECTS
9    YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ANY
     "DISPUTE" (AS DEFINED BELOW) BETWEEN YOU AND . . . SONY
10   INTERACTIVE ENTERTAINMENT AMERICA LLC . . . . YOU HAVE A
     RIGHT TO OPT OUT OF THE BINDING ARBITRATION AND CLASS
11   ACTION WAIVER PROVISIONS AS DESCRIBED IN THE "BINDING
     INDIVIDUAL ARBITRATION" SECTION.**

12

13   King Decl., ¶ 9, Exh. 2, p. 1.

14   The "Binding Individual Arbitration" section applies broadly to all "Disputes" "regarding

15   any PSN Services or the use of any devices sold by a Sony Entity to access PSN Services:"

16   The term "Dispute" means any dispute, claim, or controversy between you and any of
     the Sony Entities regarding any PSN Services or the use of any devices sold by a Sony
17   Entity to access PSN Services, whether based in contract, statute, regulation,
     ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or
18   negligence), or any other legal or equitable theory, and includes the validity,
     enforceability or scope of this "BINDING INDIVIDUAL ARBITRATION" section
19   (with the exception of the enforceability of the Class Action Waiver clause below).
     "Dispute" is to be given the broadest possible meaning that will be enforced. If you
20   have a Dispute with any Sony Entity or any of a Sony Entity's officers, directors,
     employees and agents that cannot be resolved through negotiation within the time
21   frame described in the "Notice of Dispute" clause below, you and the Sony Entity that
     you have a Dispute with agree to seek resolution of the Dispute only through
22   arbitration of that Dispute in accordance with the terms of this section, and not litigate
     any Dispute in court, except for those matters listed in the Exclusions from Arbitration
23   clause. Arbitration means that the Dispute will be resolved by a neutral arbitrator
     instead of in a court by a judge or jury.

24   King Decl., Exh. 2, p. 17.[2]  The PSN ToSUA also delegates to the arbitrator any and all

25   "Disputes" regarding its "validity, enforceability or scope."  *Id.*  Accordingly, the express

26

27   _____

     [2] These excerpts are from the current version of the PSN ToSUA which went into effect on April
28   1, 2019 and was the version in effect when C.R.B. created his account and made the challenged

contractual language requires that the arbitrator resolve all issues regarding the enforceability of the arbitration provision and/or the applicability of the arbitration provision to the subject matter of a specific dispute.

The PSN ToSUA affords consumers the opportunity to opt-out of these arbitration provisions:

> **RIGHT TO OPT OUT OF BINDING ARBITRATION AND CLASS ACTION WAIVER WITHIN 30 DAYS. IF YOU DO NOT WISH TO BE BOUND BY THE BINDING ARBITRATION AND CLASS ACTION WAIVER IN THIS SECTION, YOU MUST NOTIFY US IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU ACCEPT THIS AGREEMENT UNLESS A LONGER PERIOD IS REQUIRED BY APPLICABLE LAW. YOUR WRITTEN NOTIFICATION MUST BE MAILED TO 6080 CENTER DRIVE, 10TH FLOOR, LOS ANGELES, CA 90045, ATTN: LEGAL DEPARTMENT/ ARBITRATION AND MUST INCLUDE: (1) YOUR NAME, (2) YOUR ADDRESS, (3) YOUR PSN SERVICES ONLINE ID, IF YOU HAVE ONE, AND (4) A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH ANY SONY ENTITY THROUGH ARBITRATION.**

King Decl. Exh. 2, pp. 17-18.

Those who do not opt-out are required to arbitrate any "Dispute" with any Sony Entity and must do so on an individual basis:

> **Class Action Waiver. ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION, UNLESS BOTH YOU AND THE SONY ENTITY WITH WHICH YOU HAVE A DISPUTE SPECIFICALLY AGREE TO DO SO IN WRITING FOLLOWING INITIATION OF THE ARBITRATION. THIS PROVISION DOES NOT PRECLUDE YOUR PARTICIPATION AS A MEMBER IN A CLASS ACTION FILED ON OR BEFORE AUGUST 20, 2011. THIS PROVISION IS NOT APPLICABLE TO THE EXTENT THIS WAIVER IS PROHIBITED BY LAW.**

King Decl., Exh. 2, p. 18.  SIE maintains records of all opt-outs and has confirmed that neither Plaintiff nor C.R.B. opted out.  *Id.*, ¶ 10.

### 2. The SSLA Also Requires Arbitration and Allows Consumers to Opt-Out

A PS4 cannot be used straight out of the box—it must first be set up.  King Decl., ¶ 3.

---

purchases.  The version of the PSN ToSUA in effect when Plaintiff created her account in April 2013 contains a substantively identical arbitration agreement.  (King Decl., Exh. 3, pp. 19-20.)

1  The SSLA is presented on-screen to users during the set-up process.  *Id.*  The full text of the

2  agreement is presented in a scroll-box so users can review its terms at that point in the set-up

3  process.  *Id*.  Users must accept the SSLA by clicking an "Accept" button before they can

4  complete the console set-up process.  *Id*.  If they do not click "Accept," then the set-up process

5  ends and the consumer cannot use the PS4.  *Id*.  In short, it is impossible to use a PS4 console

6  without first having agreed to the SSLA.  Because Plaintiff alleges that the purchases she

7  challenges were made through their PS4, she has implicitly conceded that she agreed to the

8  SSLA.  *See* Compl., ¶¶ 27, 31, 50; King Decl., ¶ 3.

9      The SSLA is broad in scope and applies to the "System Software," which is defined as

10  "any system software, firmware and Internet browser software and other application software

11  included in your PS4 system and any patches, updates, upgrades or new versions of that system

12  software . . . provided to or made available for your PS4 system . . . ."  King Decl., ¶ 4, Exh. 1, p.

13  1.  It includes an arbitration provision with a class action waiver but allows consumers to opt-out

14  of arbitration and the class waiver at their election.  *Id.* ¶ 10 & Exh. 1, pp. 1, 5-6.

15      Consumers are notified of the arbitration provision and their right to opt-out by

16  capitalized text appearing at the beginning of the SSLA:

17  NOTE: IF YOU ARE A UNITED STATES RESIDENT . . . THIS AGREEMENT
    CONTAINS A BINDING INDIVIDUAL ARBITRATION AND CLASS
18  ACTION WAIVER PROVISION IN SECTION 9 THAT AFFECTS YOUR
    RIGHTS UNDER THIS AGREEMENT AND WITH RESPECT TO ANY
19  "DISPUTE" (AS DEFINED IN SECTION 9) BETWEEN YOU AND A "SONY
    ENTITY" (AS DEFINED IN SECTION 9).  YOU HAVE A RIGHT TO OPT OUT
20  OF THE BINDING ARBITRATION AND CLASS ACTION WAIVER
    PROVISIONS AS DESCRIBED IN SECTION 9.

21  *Id.*, Exh. 1, p. 1.  Importantly, consumers who validly opt-out can still set up and use their PS4—

22  they simply are not bound to arbitrate any subsequent claims.  *Id.*, ¶ 10.

23      Section 9 of the SSLA is the arbitration provision.  By its terms, it applies broadly to all

24  "Disputes" with any "Sony Entity" involving any use of the System Software:

25  The term "Dispute" means any dispute, claim or controversy between you and SIE
    Inc, Sony Interactive Entertainment LLC, any of their current or former affiliates,
26  or any predecessor or successor entity . . . .  regarding use of System Software,
    whether based in contract, statute, regulation, ordinance, tort . . . or any other legal
27

28

or equitable theory . . . and includes the validity, enforceability or scope of this Section 9 . . . . "Dispute" has the broadest possible meaning that will be enforced.

*Id.*, Exh. 1, p. 5.

Section 9, on its face, also controls disputes regarding gateway issues of arbitrability.  By its express language, the SSLA requires that the parties arbitrate the "validity, enforceability or scope" of the arbitration provision.  *Id.*  Accordingly, as with the PSN ToSUA, the express contractual language requires that the arbitrator resolve all issues regarding the enforceability of the arbitration provision and/or the applicability of the arbitration provision to the subject matter of a specific dispute.

Section 9 also explicitly prohibits the prosecution of class claims:

ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION . . . .

*Id.*, Exh. 1, p. 6.

In language nearly identical to that used in the PSN ToSUA, the SSLA also affords the opportunity to opt-out:

IF YOU DO NOT WISH TO BE BOUND BY THE BINDING ARBITRATION AND CLASS ACTION WAIVER IN THIS SECTION 9, YOU MUST NOTIFY SIE Inc[.] IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU ACCEPT THIS AGREEMENT.

*Id.*, Exh. 1, p. 5.  Plaintiff did not opt-out.  *Id.*, ¶ 10.

## III.   ARGUMENT

### A.   The Court Must Compel Arbitration of Plaintiff's Claims Because She Agreed to Arbitrate

The arbitration provisions of both the PSN ToSUA and the SSLA state expressly that they are governed by the Federal Arbitration Act ("FAA").  King Decl., Exh. 1, p. 6, Exh. 2, p. 18 ("[T]he Federal Arbitration Act ('FAA') governs the arbitrability of all Disputes."); 9 U.S.C. § 2, *et seq.*  The FAA and the body of federal law developed pursuant to it governs the interpretation and application of arbitration agreements that are made expressly subject to its provisions. *DirecTV, Inc. v. Imburgia*, 577 U.S. ---, 136 S. Ct. 463, 468 (2015) (holding FAA

1    preempts state law where arbitration provision made expressly subject to FAA); *Williams v. Eaze*

2    *Solutions, Inc.*, 417 F. Supp. 3d 1233, 1238 (N.D. Cal. 2019) (Donato, J.) (holding FAA applies

3    where terms of service states expressly that "Federal Arbitration Act will govern the

4    interpretation and enforcement" of the dispute resolution section).

5          Section 2 of the FAA codifies a strong federal policy favoring arbitration, making

6    arbitration provisions "valid, irrevocable, and enforceable, save upon such grounds as exist at

7    law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see AT&T Mobility v.

8    Concepcion,* 563 U.S. 333, 339 (2011) (holding strong federal policy favoring arbitration

9    requires rigorous enforcement of arbitration agreements).  Section 2 creates a heavy presumption

10   in favor of arbitrability that requires district courts to resolve all doubt as to the scope of

11   arbitrable issues in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

12   460 U.S. 1, 24-25 (1983) (holding "questions of arbitrability must be addressed with a healthy

13   regard for the federal policy favoring arbitration," and "any doubts concerning the scope of

14   arbitrable issues should be resolved in favor of arbitration . . . ."); *Volt Info. Sciences, Inc. v. Bd.

15   of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989) (noting "settled" rule that

16   questions of arbitrability in contracts subject to the FAA "must be resolved with a healthy regard

17   for the federal policy favoring arbitration"); *Mitsubishi Motors Corp. v. Soler Chrysler–

18   Plymouth, Inc.,* 473 U.S. 614, 626 (1985) (noting that while the parties' intentions control

19   interpretation of contract subject to the FAA, "those intentions are generously construed as to

20   issues of arbitrability").

21         The strong presumption in favor of arbitration embodied in the FAA limits the district

22   court's analysis on a motion to compel arbitration to two questions:  (1) whether the parties

23   agreed to arbitrate; and (2) if so, whether the agreement to arbitrate encompasses the asserted

24   claims.  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004);

25   *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Martinez v.

26   Ross Stores, Inc.*, No. 18-cv-04636-JD, 2019 WL 4221704 at *1 (N.D. Cal. Sept. 5, 2019)

27   Donato, J.) (citing *Lifescan*, 363 F.3d at 1012.  In short, the two considerations are mutual

28

DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CASE NO. 3:20-cv-01732-JD

assent and scope, and once the district court finds that both are satisfied, it must compel

arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (noting FAA "leaves

no place for the exercise of discretion by a district court, but instead mandates that district courts

shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has

been signed" (emphasis in original)); *Williams*, 417 F. Supp. 3d at 1239 (noting district court

"must order the parties to proceed to arbitration" when both factors are established (emphasis

supplied) (quoting *Lifescan*, 363 F.3d at 1012)); accord *Martinez*, 2019 WL 4221704 at *1.

**B.      Plaintiff Assented to the Broad Arbitration Clauses of both the PSN ToSUA and the SSLA**

Assent is the first step in the Court's analysis and SIE's burden of establishing it is not a

heavy one. *See* 9 U.S.C. § 4; *Vernon v. Qwest Commc'ns Int'l, Inc.,* 857 F. Supp. 2d 1135, 1148

(D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) (explaining moving party's

obligation is to establish simple existence of arbitration agreement).  Because agreements to

arbitrate are contracts, they are analyzed under ordinary state law principles. *See First Options*

*of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (noting that courts "apply ordinary state-law

principles that govern the formation of contracts").  The online contracts at issue here are treated

no differently than any other type of contract:  they are formed by the mutual assent of the

parties, which is established by either actual or constructive knowledge of the contract terms.

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910-12 (N.D. Cal. 2011) (discussing

contractual assent by actual and/or constructive knowledge); *see, e.g.*, *Norcia v. Samsung*

*Telecomm. Am., LLC*, No. 14-CV-00582-JD, 2014 WL 4652332, at *4 (N.D. Cal. Sept. 18, 2014)

(Donato, J.) (noting an offeree's consent to the terms of a contract may be inferred based on

conduct consistent with acceptance).

"Clickwrap" or "scroll-wrap" agreements such as the SSLA and PSN ToSUA are

enforceable because they require users to affirmatively click an "Agree" or equivalent button,

which constitutes an objective manifestation of assent to the contract terms.  *Loewn v. Lyft, Inc.*,

129 F. Supp. 3d 945, 957-58 (N.D. Cal. 2015) (plaintiffs assented to arbitration and delegation

clauses in Terms of Service for Lyft services "by clicking 'I agree' on the Lyft App," where the

1  terms "were displayed on the screen [and] Plaintiffs had the opportunity to scroll through the

2  terms prior to assent"); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL

3  2903752, at *9 (N.D. Cal. June 25, 2014) (holding click constituted affirmative manifestation of

4  assent where the plaintiff clicked a button to continue registration that was located near a

5  hyperlink to the terms), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).[3]

6      Plaintiff assented to the arbitration provisions in the PSN ToSUA and the SSLA—she

7  could not have activated the PS4 or used her PSN account had she not. King Decl. ¶¶ 3, 7, 9.

8  Both contracts were presented on-screen and in full during the PS4 console set-up and when

9  Plaintiff created her PSN account, and she was required to click an "Accept" button for each to

10  proceed. *Id.*, ¶¶ 3, 6. Moreover, both of the arbitration provisions afforded Plaintiff the

11  opportunity to opt-out of arbitration with no repercussion: Plaintiff still could have set up the PS4

12  and created a PSN account, and she (and C.R.B.) would have still been able to use the PS4 to

13  play games and other content and make in-game purchases. *Id*; ¶ 10; *see Arellano v. T-Mobile*

14  *USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165, at *4-6 (N.D. Cal. Apr. 11, 2011)

15

16  [3] Many courts are in accord. *See, e.g.*, *Selden v. Airbnb, Inc.*, No. 16-cv-00933 (CRC), 2016
    WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (noting that online contracts are now

17  "commonplace" and that "any reasonably-active adult consumer will almost certainly appreciate
    that by signing up for a particular service, he or she is accepting the terms and conditions of the

18  provider" by clicking button); *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No.

19  CV 10-03738 AB (CWx), 2015 WL 5311085, at *26 (C.D. Cal. Sept. 10, 2015) (noting
    enforceability of click-through agreements); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172,

20  1175 n.5 (W.D. Wash. 2014) ("'[C]lickwrap' agreements are completely enforceable"); *Fteja v.
    Facebook, Inc.*, 841 F. Supp. 2d 829, 837-40 (S.D.N.Y. 2012) (concluding website provided

21  adequate notice of Terms of Use where user had to click "Sign Up" to assent to the hyperlinked

22  terms); *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("[C]lickwrap
    agreements are valid and enforceable contracts" (citation omitted)); *U.S. v. Drew*, 259 F.R.D.

23  449, 462 n.22 (C.D. Cal. 2009) ("Clickwrap agreements 'have been routinely upheld by circuit
    and district courts.'" (citation omitted)); *Huff v. Liberty League Int'l, LLC*, No. EDCV 08-1010-

24  VAP (SSx), 2009 WL 1033788, at *8 (C.D. Cal. Apr., 14, 2009) ("[C]ourts across the country
    have enforced so-called 'clicking agreements' that contain arbitration clauses."); *Hauenstein v.*

25  *Software Ltd.*, No. C07-0572-MJP, 2007 WL 2404624, at *2-3 (W.D. Wash. Aug. 17, 2007)

26  (plaintiff assented to arbitration agreement by registering product online prior to use and by
    "'clicking' the appropriate box"); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 238 (E.D. Pa.

27  2007) ("By clicking on 'Yes, I agree to the above terms and conditions' button, Plaintiff
    indicated assent to the terms," including the arbitration agreement).

28

DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CASE NO. 3:20-cv-01732-JD

1   (enforcing arbitration where the plaintiff had opportunity to opt out of the agreement to

2   arbitrate).  But Plaintiff did not opt out of either agreement and thereby unequivocally assented to

3   both and agreed to arbitrate the present claims.  *See Arellano,* 2011 WL 1362165, at *4-6

4   (enforcing arbitration where the plaintiff had opportunity to opt out of the agreement to

5   arbitrate).

6   **C.      C.R.B. Assented to the PSN ToSUA, Which Contains a Broad Arbitration Clause**

7   Although not relevant to *Plaintiff's* claims, it is indisputable that C.R.B. also agreed to

8   arbitrate any claims he has against SIE when he assented to the arbitration provision in the PSN

9   ToSUA.  C.R.B. would have been presented with the same or similar screens when he created his

10  account and would have had to click "Accept" in order to activate the account.  King Decl., ¶¶ 6,

11  9.  Plaintiff, in fact, acknowledges that C.R.B. had to agree to the ToSUA when he created his

12  PSN account.  *See* Compl., ¶¶ 7, 8, 28.  Thus, C.R.B. assented to the PSN ToSUA and did not

13  opt-out.  King Decl., ¶¶ 9, 10.  To the extent C.R.B. attempts to assert claims against SIE, he

14  must arbitrate them.

15  **D.      Any Remaining Threshold Issues of Arbitrability Under the PSN ToSUA and the SSLA Have Been Delegated To The Arbitrator**

16  The second and final step in the Court's arbitration analysis is scope.  Here, however, the

17  parties have delegated scope, along with all other threshold issues of enforceability, to the

18  arbitrator.  King Decl. ¶ 4, Exh. 1, p. 1 (delegating disputes regarding "the validity,

19  enforceability or scope of this Section 9" to the arbitrator); *id.*, ¶ 9, Exh. 2, p. 17 (delegating

20  disputes regarding "the validity, enforceability or scope of this 'BINDING INDIVIDUAL

21  ARBITRATION' section" to the arbitrator).  Accordingly, as long as the delegation clauses in the

22  two agreements are enforceable, which they are, the Court's inquiry ends.

23  The United States Supreme Court has confirmed that parties to an arbitration agreement

24  can delegate threshold issues of arbitrability to the arbitrator for resolution.  *Henry Schein, Inc. v.*

25  *Archer and White Sales, Inc.*, 586 U.S. ---, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019) (noting

26  "when the parties' contract delegates the arbitrability question to an arbitrator, a court may not

27

28

override the contract" and "possesses no power to decide the arbitrability issue"); *First Options of Chi.*, 514 U.S. at 943 (citing *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Rent-A-Center, West, Inc.*, 561 U.S. at 68-74 (upholding enforceability of an "agreement to arbitrate threshold issues" regarding arbitrability); *accord Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 243 (2016) (holding "'who decides' [issues of arbitrability] is a matter of party agreement"). A delegation clause is enforceable as long as the court is presented with "clear and unmistakable evidence" of the parties' intent to delegate, and it is settled that contract language standing alone can satisfy the "clear and unmistakable" standard. *Mohamed v. Uber Techs, Inc.*, 848 F.3d 1201, 1208-09 (9th Cir. 2016) (holding evidence of a "[c]lear and unmistakable" delegation includes "an express agreement to do so"); *Momot v. Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2010) (holding issues of arbitrability delegated to arbitrator where language of agreement clearly and unmistakably delegated gateway issues); *accord Malone v. Super. Ct.*, 226 Cal. App. 4th 1551, 1560 (2014) (holding contractual language constituted clear and unmistakable delegation); *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014) (same); *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880, 892-894 (2017) (same).

The delegation language of both the PSN ToSUA and the SSLA is "clear and unmistakable." The PSN ToSUA states that the term "Disputes" is to be given the "broadest possible meaning" and expressly includes "the validity, enforceability or scope of this 'BINDNG INDIVIDUAL ARBTITRATION' section." King Decl. ¶ 9, Exh. 2, p. 17. Using similar language, the SSLA states that all "Disputes" are subject to arbitration, defines "Disputes" to have "the broadest possible meaning," and specifically includes "the validity, enforceability or scope of this Section 9 [the arbitration provision]." *Id.*, ¶ 4, Exh. 1, p. 5. Thus, Plaintiff has "clearly and unmistakably" agreed to delegate issues pertaining to arbitrability, including scope, to the arbitrator.[4]

The Ninth Circuit has repeatedly interpreted similar language as a "clear and unmistakable" delegation. In *Mohamed*, for example, the Ninth Circuit did not hesitate in

---

[4] As has C.R.B. to the extent that his agreement to arbitrate is relevant here.

1    finding that the phrase "the enforceability, revocability or validity" was sufficiently "clear and

2    unmistakable" to delegate all issues pertaining to arbitrability to the arbitrator.  848 F.3d at 1208-

3    09.  Similarly, in *Momot,* the Ninth Circuit affirmed the arbitrability of gateway issues where the

4    contract stated: "If a dispute arises out of or relates to this Agreement, the relationships that

5    result from this Agreement, the breach of this Agreement *or the validity or application of any of*

6    *the provisions of this Section 4* [the arbitration provision] . . . the dispute shall be resolved

7    exclusively by binding arbitration."  652 F.3d at 988 (emphasis in original).

8         The agreements here use language similar to that used in *Mohamed* and *Momot*.  Both the

9    PSN ToSUA and the SSLA expressly delegate all disputes regarding "the validity, enforceability

10   or scope" of "this 'BINDING INDIVIDUAL ARBITRATION' section" to the arbitrator.  King

11   Decl., Exh. 1, p. 5; *id.*, Exh. 2, p. 17.  This language is comprehensive and leaves no room for

12   interpretation—both arbitration provisions "clearly and unmistakably" encompass all "disputes,"

13   including "disputes" relating to whether Plaintiff's specific claims are arbitrable.  *See Aceves v.*

14   *Autonation, Inc*., 317 F. App'x. 665, 666-67 (9th Cir. 2009) (provision stating claims regarding

15   "validity, enforceability or scope of this Arbitration Provision" is clear and unmistakable

16   delegation of issue of scope).  This Court, in fact, has considered language identical to the

17   language at issue here and found it to be a clear and unmistakable delegation of gateway issues

18   of arbitrability.  *See McLellan v. Fitbit, Inc*., No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2-3

19   (N.D. Cal. Oct. 11, 2017) (Donato, J.) (finding clear and unmistakable delegation where the

20   parties incorporated into the arbitration agreement AAA Commercial Arbitration Rule 7(a),

21   which empowers arbitrator to hear disputes concerning "existence, scope, or validity of the

22   arbitration agreement or to the arbitrability of any claim or counterclaim").

23        Additionally, both the PSN ToSUA and the SSLA incorporate the American Arbitration

24   Association ("AAA") Consumer Arbitration Rules.  As this Court has recognized, incorporating

25   the AAA Rules is further evidence of an intent to delegate because the AAA rules give the

26   arbitrator authority to rule on her own jurisdiction, including any objections with respect to the

27

28
DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CASE NO. 3:20-cv-01732-JD

1  *existence, scope, or validity* of the arbitration agreement.  *See* Consumer Arbitration Rule 14(a)[5];

2  *Williams*, 417 F. Supp. 3d at 1241 (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.

3  2015)).  Accordingly, all issues pertaining to arbitrability must be resolved by the arbitrator.

4  ### E.    The Litigation Should Be Stayed Pending Arbitration

5  Section 3 of the FAA authorizes the court to stay the litigation upon referring a dispute to

6  arbitration:

7  > If any suit or proceeding be brought in any of the courts of the United States
> upon any issue referable to arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending, upon being satisfied that
> the issue involved in such suit or proceeding is referable to arbitration under
> such an agreement, shall on application of one of the parties stay the trial of
> the action until such arbitration has been had in accordance with the terms of
> the agreement, providing the applicant for the stay is not in default in
> proceeding with such arbitration.

11  9 U.S.C. § 3.  Because Plaintiff agreed to arbitrate the gateway issues of enforceability, scope,

12  and validity, as well as the underlying merit of her claims, a stay is appropriate.  *MediVas, LLC*

13  *v. Marubeni Corp.*, 741 F.3d 4, 9-10 (9th Cir. 2014) (adopting rebuttable presumption that

14  actions are stayed pending arbitration if not expressly dismissed); *Grear v. Comcast Corp.*, No.

15  C 14–05333 JSW, 2015 WL 926576, at *1-2 (N.D. Cal. Mar. 3, 2015) (staying litigation under

16  FAA § 3 upon referring dispute to arbitration).

17  ## IV.    CONCLUSION

18  For the foregoing reasons, SIE respectfully requests that the Court stay the action,

19  pending arbitration, and compel the case to arbitration in accordance with the parties'

20  agreements.

---

26  [5] The AAA Consumer Arbitration Rule 14(a) provides: "The arbitrator shall have the power to
27  rule on his or her own jurisdiction, including any objections with respect to the existence, scope,
or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *See*
28  AAA Consumer Arbitration Rules at: https://adr.org/sites/default/files/Consumer%20Rules.pdf.

1    Dated: July 10, 2020                    SACKS, RICKETTS & CASE LLP

2                                            By: /s/ *Michele Floyd*
                                                 Luanne Sacks
3                                                Michele Floyd
                                                 Mike Scott
4                                            Attorneys for Defendant,
                                             Sony Interactive Entertainment LLC
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CASE NO. 3:20-cv-01732-JD